IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>PACIFIC THOMAS CORPORATION, dba PACIFIC THOMAS CAPITAL, dba SAFE STORAGE,<br>　　　　Debtor. | Case No. 14-cv-03465-MMC<br>Bankruptcy Case No. 14-54232 MEH<br>**DECISION AFFIRMING JUDGMENT OF BANKRUPTCY COURT** |
| KYLE EVERETT, Chapter 11 Trustee,<br>　　　　Plaintiff and Appellee,<br>　　v.<br>RANDALL WHITNEY, et al.,<br>　　　　Defendants and Appellants. | |

Before the Court are Defendants/Appellants Pacific Trading Ventures, Pacific Trading Ventures, Ltd. (collectively, "PTV"),[1] Randall Whitney ("Whitney"), and Jill V. Worsley's ("Worsley") (collectively, "Defendants" or "Appellants") appeal from a judgment entered November 4, 2014, in the United States Bankruptcy Court, in favor of Kyle Everett ("Everett"), the Chapter 11 trustee ("the Trustee" or "Appellee") for the estate of the debtor, Pacific Thomas Corporation ("PTC"). Having read and considered the parties' respective briefs and the record on appeal, the Court rules as follows.

---

[1] In their briefing, the parties do not distinguish between the two entity defendants and, instead, refer to them collectively as "Pacific Trading Ventures" or "PTV." (See, e.g., Appellants' Opening Brief ("OB") at 1; Appellee's Brief ("AB") at 1.)

**BACKGROUND**

**A.   Procedural History**

On August 6, 2012, PTC filed a petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. (See Pleadings Referenced in Appellee's Brief ("Pleadings") Tab 9 at 2.) Approximately five months later, on January 16, 2013, Everett was appointed the acting Chapter 11 trustee of the PTC bankruptcy estate. (See id.)

Thereafter, on April 11, 2013, the Trustee commenced an adversary proceeding against Defendants, by way of a complaint for declaratory relief, an accounting, the turnover of amounts due the bankruptcy estate, and injunctive relief. (See Appellants' Exs. Tab 12.) In the complaint, the Trustee alleged Defendants withheld funds owed to PTC under a management agreement entered by the parties in 2003, and sought an award in the amount of those funds as well as a declaration that a subsequently executed lease under which Defendants claimed entitlement to the funds was unenforceable in that it constituted "part of a scheme to siphon funds" belonging to the bankruptcy estate. (See id. ¶2.)

On May 13, 2013, Whitney moved to dismiss the complaint for failure to state a claim (see Appellants' Exs. Tab 13), which motion was denied by the Bankruptcy Court (see Pleadings Tab 6 at 13:11-15; Appellants' Exs. Tab 13).

On April 29, 2014, the Bankruptcy Court held a one-day trial on the Trustee's claims[2] (see Appellants' Exs. Tab 20)[3] and, on July 7, 2014, the Bankruptcy Court issued its Decision after Trial (see Appellants' Exs. Tab 2). Thereafter, on November 4, 2014, the Bankruptcy Court issued an Amended Decision after Trial ("Amended Decision") (see Appellants' Exs. Tab 5) and, that same day, judgment was entered thereon, by which the lease was declared invalid, the Trustee was awarded the sum of $566,685, and Defendants were enjoined, inter alia, from further participation in PTC's business

---

[2] Shortly before trial, the Trustee withdrew his claim for an accounting.

[3] Citations to the trial transcript are indicated herein by the abbreviation "Trial Tr."

2

1   operations[4] (see id. Tab 3).[5]

2   By the instant appeal, Defendants argue the Bankruptcy Court erred in denying
3   Whitney's motion to dismiss, finding the lease invalid, and awarding judgment in the
4   amount of $566,685 against PTV.

### B.   Factual Background[6]

PTC is a California corporation that, at all relevant times, owned a number of real properties located in Oakland, California (hereinafter, "the Premises"), a portion of which the parties describe as "the Self-Storage Facility." (See Pleadings Tab 9 at 2-3.) PTV is a Nevada corporation authorized to do business in California. (See id. at 2.) At all relevant times, Whitney was the Chief Executive Officer and Chairman of the Board of PTC, and Worsley, his mother, was the sole shareholder and Chief Operating Officer of PTV. (See id.)

On January 9, 2003, PTC and PTV entered into a Management Agreement by which PTV agreed to provide property management services for PTC at the Self-Storage Facility. (See Appellee's Ex. 16; Pleadings Tab 9 at 3.) Under the Management Agreement, PTC was to pay to PTV, as ongoing compensation for PTV's management services, the greater of $1500 per month or 6% of the monthly gross revenues actually collected. (See Appellee's Ex. 16 at 4.)

On January 1, 2011, PTC and PTV entered into an Amended Management Agreement, to include additional portions of the Premises. (See Appellee's Ex. 17; Pleadings Tab 9 at 3.) Under the Amended Management Agreement, the terms pertaining to PTV's ongoing compensation were modified to provide for the greater of $2000 per month or 6% of the monthly gross revenues based on accrued charges. (See

---

[4] The award of injunctive relief is not at issue in the instant appeal.

[5] The Bankruptcy Court's original and amended decisions appear identical in all material respects, and no party has identified any difference between them.

[6] The following facts are not disputed.

3

Appellee's Ex. 17 at 1.)

In the interim, on January 1, 2005, PTC and PTV executed a Lease of Improved Industrial/Commercial Property ("2005 Lease"), for a period of five years, by which PTC leased to PTV the various portions of the Premises comprising the Self-Storage Facility. (See Appellee's Ex. 11.)  Under the 2005 Lease, PTV was to pay rent to PTC in the amount of $2500 per month, plus the greater of $22,500 or 40% of "the property net operating income proceeds," less certain expenses.  (See id. at 1-2.)

Next, on January 1, 2008, PTC and PTV executed, without reference to the 2005 Lease, another Lease of Improved Industrial/Commercial Property ("2008 Lease"), in this instance for a portion of the property covered by the 2005 Lease (see Appellee's Ex. 12), and by which PTV was to pay rent to PTC in the amount of $2500 per month (see id. at 1.)[7]

Thereafter, on January 1, 2010, PTC and PTV executed a document extending the 2005 Lease for an additional five-year term ("2010 Extension").  (See Appellee's Ex. 13 at 1.)

Lastly, on August 1, 2012, PTC and PTV executed an Amendment and Modification to Lease, by which PTV was to pay rent to PTC in the amount of $70,000 per month ("2012 Amendment").  (See Appellee's Ex. 14 at 1.)

## LEGAL STANDARD

A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  See In re Gebhart, 621 F.3d 1206, 1209 (9th Cir. 2010). Mixed questions of law and fact are reviewed de novo.  See In re Hamada, 291 F.3d 645, 649 (9th Cir. 2002).

With respect to findings of fact, the appellant must demonstrate that any

---

[7] No party to the instant action asserts the 2008 Lease governs or governed the relationship between PTC and PTV, nor does any party contend those entities ever operated under its terms.  Consequently, the Court does not further address said document herein.

4

challenged findings were clearly erroneous. See In re Huntington Ltd., 654 F.2d 578, 583 (9th Cir. 1981). "The clear error standard is significantly deferential and is not met unless the reviewing court is left with a definite and firm conviction that a mistake has been committed." Fisher v. Tucson Unified Sch. Dist., 652 F.3d 1131, 1136 (9th Cir. 2011) (internal quotation and citation omitted). A court's factual determination is clearly erroneous only if it is illogical, implausible, or lacks "support in inferences that may be drawn from facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc) (internal quotation and citation omitted). "A mere showing that the bankruptcy court could have reached another conclusion based on the evidence presented is insufficient." In re Huntington Ltd., 654 F.2d at 583.

A bankruptcy court's decision may be affirmed "on any ground fairly supported by the record." See In re Warren, 568 F.3d 1113, 1116 (9th Cir. 2009).

**DISCUSSION**

As noted, the instant appeal raises three issues: (1) whether the Bankruptcy Court erred in denying Whitney's motion to dismiss the adversary complaint and proceeding to trial; (2) whether the Bankruptcy Court erred in finding the 2005 Lease, as well as the subsequent extension and amendment thereto, invalid; and (3) whether the Bankruptcy Court properly calculated a turnover award against PTV. The Court addresses each such issue in turn.

**A.  Whitney's Motion to Dismiss**

At the outset, Defendants assert the Trustee's complaint was subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure[8] and that the Bankruptcy Court erred in not issuing an order of dismissal.

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "To survive a motion

---

[8] Rule 12(b) applies in adversary proceedings. See Fed. R. Bankr. P. 7012(b).

5

1  to dismiss, a complaint must contain sufficient factual material, accepted as true, to state
2  a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
3  (internal quotation and citation omitted).

4      Here, Defendants argue the complaint fails to meet the applicable pleading
5  standard on two grounds: (1) lack of "a cognizable legal theory" upon which the 2005
6  Lease might be found unenforceable (OB at 11); and (2) insufficient facts "to cross the
7  line between possibility and plausibility" (id. at 12) (internal quotation and citation
8  omitted).

9      A bankruptcy court's denial of a motion to dismiss is reviewed de novo. See In re
10 Warren, 568 F.3d at 1116. "After a trial on the merits," however, "the sufficiency of the
11 allegations in the complaint is irrelevant." See Bennett v. Pippin, 74 F.3d 578, 585 (5th
12 Cir. 1996); In re DenBeste, 2012 WL 5416513, at *5 (9th Cir. BAP 2012) (finding "no
13 need to review" bankruptcy court's denial of motion to dismiss where "[t]he trial has
14 occurred"); see also Affordable Housing Dev. Corp. v. City of Fresno, 433 F.3d 1182,
15 1193 (9th Cir. 2006) (noting "we do not review the denial of summary judgment when the
16 case has gone to trial"); Lum v. City and County of Honolulu, 963 F.2d 1167, 1170 (9th
17 Cir. 1992) (finding review of summary judgment denial after trial on merits "is a pointless
18 academic exercise").

19     Accordingly, given that the instant case proceeded through a full trial on the
20 merits, the Court does not further address herein Defendants' arguments with respect to
21 the motion to dismiss.

22 **B.  Validity of the Lease Agreements**

23     The central issue on appeal concerns the parties' dispute as to whether the
24 Management Agreement or the 2005 Lease governs PTC and PTV's relationship as to
25 their respective rights and obligations and, in particular, their rights and obligations
26 pertaining to the Self-Storage Facility. In its Amended Decision, the Bankruptcy Court
27 found the 2005 Lease, the 2010 Extension, and the 2012 Amendment were "not valid
28 contracts between the parties." (Am. Dec. at 7.) In support of their appeal, Defendants

argue the 2005 Lease "met all of the formal requirements of a lease" (OB at 15), whereas the Trustee contends the 2005 Lease, irrespective of any such facial compliance, is a "sham" (AB at 13) and, consequently, is invalid.

### 1. Sham Transaction

A claim that a writing constitutes a sham transaction is a claim that such writing was not intended by the signatories thereto "as an agreement altering their voluntary relations, i.e., it is no jural act at all." FPI Development, Inc. v. Nakashima, 231 Cal. App. 3d 367, 401 (1991). A contract can be shown to be a sham "by the surrounding circumstances." Shafford v. Otto Sales Co., 119 Cal. App. 2d 849, 859 (1953). Here, the circumstances set forth in the record before the Bankruptcy Court amply support a finding that the 2005 Lease and, consequently, any purported extension or amendment thereof, constitute sham transactions.

At the outset, the Court notes that Whitney conceded the parties executed the 2005 Lease for the primary, if not sole, purpose of satisfying the demands of potential lenders, who had expressed a preference for that form of commercial relationship. (See Whitney's pro se Opening Statement, Trial Tr. at 31:23-32:5); see also P.A. Smith Co. v. Muller, 201 Cal. 219, 220-22, 224 (1927) (holding evidence sufficed to support trial court's finding contract for purchase of plate glass constituted sham, where executed at plaintiff glass-seller's request in order to satisfy plaintiff's suppliers that plaintiff had sufficient number of accepted orders to warrant continued supply during shortage of plate glass for building purposes).

Thereafter, as the Bankruptcy Court found, and Defendants do not dispute, PTC and PTV failed to perform or otherwise act as if a lease existed between them, and, instead, continued to operate under the Management Agreement until PTC filed for bankruptcy.[9] In particular, PTC's and PTV's respective profit and loss statements show

---

[9] Defendants' argument that "no conflict" necessarily exists between the terms of the Management Agreement and the 2005 Lease (see OB 20) misses the mark. Although, as Defendants point out, the 2005 Lease pertains solely to the Self-Storage Facility, and the Management Agreement thus could remain effective as to the other

1  that, from 2003 through 2011, the revenues and expenses of the Self-Storage Facility
2  were booked to PTC, whereas property management income was booked to PTV.[10]  (See
3  Appellee's Ex. 1, 2; Trial Tr. at 48:14-50:23.)  In addition, PTV's own bookkeeper testified
4  that, after 2005, and during the more than ten years she worked for PTV, PTV received
5  management fees for the Self-Storage Facility, paid the Self-Storage Facility's expenses,
6  and invoiced PTC for reimbursement of those expenses, all pursuant to the Management
7  Agreement.  (See Trial Tr. at 211:12-212:3, 213:13-215:21, 217:6-220:6); see also P.A.
8  Smith Co., 201 Cal. at 222 (holding evidence of other contract under which parties
9  performed serves to establish challenged writing "had no force, efficacy, or effect").
10 Although PTV, presumably acting under the 2012 Amendment, began retaining for itself
11 the rents paid by the Self-Storage Facility customers, the timing of that amendment, just
12 five days before PTC filed for bankruptcy, leaves such eleventh-hour alteration of the
13 parties' relationship subject to question, and, consequently, insufficient to persuasively
14 counter the above-referenced evidence on which the Bankruptcy Court relied.
15      Accordingly, the Bankruptcy Court did not err in finding the 2005 Lease invalid and
16 unenforceable.  Moreover, since there was no valid lease, there was nothing to "extend"
17 or "amend" and, consequently, the Bankruptcy Court did not err in finding the 2010
18 Extension and 2012 Amendment invalid as well.

19     **2.    Rescission**

20      Even assuming, arguendo, the evidence is insufficient to show the 2005 Lease
21 was a sham, the evidence nonetheless supports the Bankruptcy Court's finding of
22 invalidity.  In particular, even assuming PTC and PTV, at the time they executed the 2005

---

covered properties (see id.), that is not what happened here.  Rather, as discussed above, the parties continued to operate all of the covered properties, including the Self-Storage Facility, solely pursuant to the terms of the Management Agreement.

[10] Although Self-Storage Facility revenues are listed on PTV's books for 2011, those same revenues were booked to PTC in 2011, and an audit trail showed the journal entries by which those revenues were shifted to PTV were actually created in August 2013, after the bankruptcy filing.  (See Trial Tr. at 50:24-51:21, 52:18-54:11; see also Appellee's Ex. 1 at 48, Ex. 2 at 35.)

Lease, in fact had the intent to perform thereunder, the evidence clearly shows they mutually rescinded any such agreement.

"A contract may be rescinded if all the parties thereto consent." Cal Civ. Code § 1689(a). Such consent need not be express; it "may be implied from the acts of the parties." Pennel v. Pond Union Sch. Dist., 29 Cal. App. 3d 832, 838 (1973) (internal quotation and citation omitted). Moreover, a contract may be mutually abandoned, i.e., rescinded, "at any stage of its performance or before any performance has been commenced," and such abandonment "terminates" the contract and "entirely abrogates so much of it as is unperformed." See Honda v. Reed, 156 Cal. App. 2d 536, 539-40 (1958).

Here, the same evidence as discussed above suffices to support a finding that PTC and PTV, assuming they initially intended to perform thereunder, mutually rescinded the 2005 Lease prior to any such performance. See, e.g., id. at 537-40 (holding parties' conduct supported finding of mutual rescission of contract for lease of apartment building, where parties failed to perform any of their respective obligations in connection with escrow and thereafter "negotiated for a new and different agreement"); Lo Vasco v. Lo Vasco, 46 Cal. App. 2d 242, 245-47 (1941) (holding parties' conduct supported finding of mutual rescission of separation agreement where parties, inter alia, lived together as husband and wife for ten years thereafter and conducted their finances in accordance with existing marriage relationship rather than separation agreement).

Lastly, for the same reasons as set forth above, the 2010 Extension and 2012 Amendment likewise fail.

### 3. Conclusion Regarding Lease Validity

Accordingly, for all of the reasons discussed above, the Bankruptcy Court did not err in finding the 2005 Lease, 2010 Extension, and 2012 Amendment were not valid contracts.[11]

---

[11] In light of such finding, the Court does not address herein the parties' respective contentions regarding whether and when the 2005 Lease, if effective, was terminated by

9

### C. Calculation of Turnover Amount

The remaining issue is the Bankruptcy Court's calculation of the amount owed by PTV to PTC under the Management Agreement. Defendants contend the Bankruptcy Court failed to credit PTV for legitimate operating expenses PTV incurred on behalf of PTC in managing the Self-Storage Facility.

The Bankruptcy Court found "[t]he Trustee established, and PTV did not rebut, that PTC's estate is entitled to a judgment of $566,685 against PTV for postpetition rents received and not turned over."[12] (Am. Dec. at 15.) In reaching such conclusion, the Bankruptcy Court acknowledged that PTV apparently had applied "some portion of the postpetition rents demanded for expenses related to PTC's business," but found the evidence presented was "insufficient to determine an amount" and consequently that "PTV did not establish an amount to setoff" against the requested turnover. (Id. at 14.)

Defendants contend the Bankruptcy Court, in so ruling, wrongly placed the burden of proof on PTV to show "what portion of the income it received was expended in operating expenses." (OB at 23.) The Court disagrees.

As an initial matter, the Court does not read the Bankruptcy Court's decision as shifting to Defendants the ultimate burden of proof, i.e., the burden of persuasion, with respect to the Trustee's turnover claim. Rather, the Court reads the Bankruptcy Court's decision as shifting to Defendants the burden of production on the issue of PTV's operating expenses.[13] In particular, the Bankruptcy Court recognized the Trustee had

---

the Trustee.

[12] The Bankruptcy Court further found the Trustee had not established his claim for an additional $712,206, which claim was based on an alleged note receivable. (See Am. Dec. at 10-12.) The Trustee does not challenge the Bankruptcy Court's rejection of that claim.

[13] "The term 'burden of proof' is often confusing," as "[i]t refers to two separate and distinct evidentiary 'burdens' at trial." See Robert E. Jones et al., Rutter Group Practice Guide: Federal Civil Trials and Evidence § 8:4800 (The Rutter Group 2015) (explaining plaintiff bears ultimate burden of persuasion on plaintiff's claim and, generally, initial burden of production, after which "burden of *going forward* then shifts to defendant to produce rebuttal evidence" on particular issues) (emphasis in original).

10

"the burden of persuasion on his claim" and specified that, once the Trustee had "establishe[d] the basis of his claim," PTV[14] had "the burden of producing evidence to rebut the claim." (See Am. Dec. at 9.)

Allocation of the burden of proof, including the burden of production, is reviewed de novo. See Estate of Barton v. ADT Security Servs. Pension Plan, ___ F.3d ___, 2016 WL 1612755, at *4, 7 (9th Cir. 2016). Here, the Court finds the Bankruptcy Court did not err in determining the Trustee, who submitted a detailed accounting, had established a prima facie case as to the basis of his turnover claim. (See Am. Dec. at 14; Appellee's Ex. 4.) Having made that finding, the Court further finds the Bankruptcy Court, as set forth below, did not err in placing on PTV the burden of going forward with evidence to counter the Trustee's evidence.

In general, a party bears the burden of proving "each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th 1157, 1188 (2008) (internal quotation and citation omitted). In allocating such burden, courts consider a number of factors, including "the knowledge of the parties concerning the particular fact" and "the availability of the evidence to the parties." See id. Here, under the Management Agreement, PTV, not PTC, was responsible for maintaining "a system of record keeping and bookkeeping with respect to all receipts and disbursements in connection with the management and operation" of the Self-Storage Facility (see Appellee's Ex. 16 at 5-6), and the Trustee, in discussing the accounting he prepared, testified that he had not received documents that would allow him "to evaluate if there are any expenses that might need to be offset" (Trial Tr. at 77:9-11; see also, e.g., id. at 83:20-21, 84:17-19). Under such circumstances, PTV was in the best position to know and have available to it the invoices, documentation, and any other evidence reflecting the nature, purpose, and payment of any financial

---

[14] The Trustee did not pursue his turnover claim against any defendant other than PTV.

11

obligations it incurred.  (See, e.g., id. at 210:21-211:4 (testimony of PTV's bookkeeper, affirming she did "pretty much everything," including entering and preparing invoices, setting up payments, and issuing checks for payables); 213:13-214:14, 225:4-22 (testimony of PTV's bookkeeper, describing process by which she received and paid invoices relating to PTC's business and submitted requests to PTC for reimbursement)); see also e.g., Amaral, 163 Cal. App. 4th at 1190-91 (shifting burden of production to defendant in suit for wages owed, where defendant was "in the best position to know which class members worked on the City contracts and at which times"); Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 514 (9th Cir. 1985) (holding, in copyright infringement case, plaintiff need only prove defendant's sales to establish infringer's profits, after which burden shifts to defendant to prove elements of costs to be deducted).

        Lastly, having properly allocated the parties' respective burdens, the Bankruptcy Court did not err in finding PTV failed to establish a setoff amount.[15]  The relatively few documents submitted by PTV from its own files reflected only general categories of expenses or anticipated expenses, without any indication that any such expenditure was made or was to be made on behalf of PTC.  See Appellants' Exs. Tab 18, 19.  To the extent PTV also relied on the Trustee's own estimate of monthly operating expenses (see Appellants' Exs. Tab 17 at 5), such reliance is unavailing.  Without more, the estimate did not suffice to prove either the amount or purpose of PTV's actual expenditures, and, as the Bankruptcy Court noted, PTV did not provide "any invoices or other support[ing] evidence regarding the use of funds."  (Am. Dec. at 13.)  Moreover, as the Bankruptcy Court further noted, the Trustee's review of PTV's books and records for the period in question showed "PTV made numerous payments from the PTC rents not appropriately expenses of operation," including "Hawaii travel and condominium expenses, payment on

---

[15] Defendants cite no authority, and the Court is aware of none, for their contention that "the only proper decision" for the Bankruptcy Court was to "estimate as best as it could what the operating expenses were."  (OB at 25.)

a judgment against Whitney and insurance and travel reimbursement of Whitney." (See id. at 14; see also Trial Tr. at 85:6-16, 247:12-15.)

Accordingly, the Bankruptcy Court did not err in declining to credit PTV for claimed operating expenses.

## CONCLUSION

For the reasons stated, the judgment of the Bankruptcy Court is hereby AFFIRMED.

**IT IS SO ORDERED.**

Dated: May 10, 2016

MAXINE M. CHESNEY
United States District Judge

13